## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**JPMorgan Chase Bank, National Association**
1111 Polaris Parkway
Columbus, Ohio 43240,

      Plaintiff,

    v.

**Kentucky Leasehold, LLC**
CT Corporation System
306 W Main St., Ste. 512
Frankfort, Kentucky 40601,

*Also serve at:*
    **Kentucky Leasehold, LLC**
    747 North La Salle St., Suite 450
    Chicago, Illinois 60654,

**Peter Weitz**
747 North LaSalle St., Suite 450
Chicago, Illinois 60654,

**Inderjit Pangli**
1486 Clearbrook Road
Abbotsford, British Columbia V2T 5X3,

*and*

**Bradley Schnell**
2295 Bakerview Street
Abbotsford, British Columbia V2T 3B3,

      Defendants.

Case No.:  3:22-CV-583-CHB

Judge:  Claria Horn Boom

## **COMPLAINT**

Plaintiff JPMorgan Chase Bank, National Association, for its Complaint against Defendants Kentucky Leasehold, LLC, Peter Weitz, Inderjit Pangli, and Bradley Schnell (collectively, "Defendants") states as follows:

1.      Chase brings this civil action to remedy Defendants' continued failure and/or refusal to comply with their business and contractual obligations, which have and will cause Chase to incur millions of dollars in damages.  Defendants have a long history of knowingly and intentionally failing to fulfill their legal obligations to Chase; this is, by no means, the first instance in which Defendants (and/or related individuals and entities) have breached their obligations owed to Chase.  Once again, Defendants have wholly ceased paying the amounts due to Chase under various agreements, leaving Chase with no choice but to commence this action to recover its losses.

## PARTIES

2.      JPMorgan Chase Bank, National Association ("Chase"), is a national banking association organized under the laws of the State of Ohio with its main office located in Columbus, Ohio.  For purposes of establishing diversity jurisdiction, Chase is a citizen of the State of Ohio. 28 U.S.C. § 1348.

3.      Upon information and belief, Defendant Kentucky Leasehold, LLC ("Kentucky Leasehold") is a Kentucky limited liability company in bad standing that has been administratively dissolved, with an interest in real property located in the Commonwealth of Kentucky.

4.      Upon information and belief, Peter Weitz is a resident of the State of Illinois and the managing member of Kentucky Leasehold.

5.      Upon information and belief, Defendant Inderjit Pangli is a resident of British Columbia, Canada.

6.      Upon information and belief, Defendant Bradley Schnell is a resident of British Columbia, Canada.

7.      Upon information and belief, Messrs. Weitz, Pangli, and Schnell are the members of Kentucky Leasehold, none of whom is a resident of the State of Ohio.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and/or subjects of a foreign state and the matter in controversy exceeds $75,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over Defendants, as Defendants consented to personal jurisdiction in the United States District Court for the Western District of Kentucky for the purpose of any judicial proceeding instituted to enforce a prior settlement agreement entered into by the parties.  This Court further possesses jurisdiction over Defendants because each of the Defendants transacted business in the Commonwealth of Kentucky giving rise to this action, and Kentucky Leasehold holds an interest in real property located in the Commonwealth of Kentucky.

10.     Venue is proper in this Court, as Defendants agreed to venue in the Western District of Kentucky for the purpose of any judicial proceeding instituted to enforce a prior settlement agreement entered into by the parties.  Venue is further proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the property at issue is situated in this District.

## BACKGROUND

11.     This is not the first instance in which Defendants (and/or related individuals and entities) have breached their business and contractual obligations owed to Chase.  Chase was similarly forced to bring a civil action in this Court against several of the Defendants (and related individuals and entities), for their orchestrated and wholesale breach of contract regarding certain real estate transactions that took place in Louisville, Kentucky approximately ten years ago.

12.     The prior lawsuit was precipitated by Non-Party 321-426 Louisville Leasehold, LLC's ("Louisville Leasehold") breaches of contract in connection with various real estate transactions, which caused significant injury to Chase.

3

**Underlying Agreements: Brief History of Ground Lease and Ground Sublease.**

13.     Chase is a party to a lease agreement dated August 1, 1981 (the "Ground Lease"), whereby Chase leases real property located at 321 South Fifth Street and 426 West Jefferson Street in Louisville, Kentucky (the "Ground Lease Property").  A true and accurate copy of the Ground Lease is attached hereto as Exhibit 1.

14.     The initial term of the Ground Lease extends through December 31, 2030.

15.     Under the terms of the Ground Lease, the tenant is liable for rent, taxes, utilities, and insurance associated with the Ground Lease Property.

16.     On or about August 8, 2007, Chase transferred its leasehold interest in the Ground Lease Property to Non-Party BREOF BNK2 Louisville LLC ("BREOF Louisville") pursuant to an agreement of ground sublease (the "Ground Sublease").

17.     Under the terms of the Ground Sublease, BREOF Louisville (as subtenant) was required to pay to Chase (as sublandlord), on a pass-through basis, the amount of rent due under the Ground Lease.  BREOF Louisville was also required to pay taxes, utilities, and insurance directly to the third parties entitled to receive these amounts.

18.     While BREOF Louisville paid Chase the amounts due under the Ground Lease on a pass-through basis, Chase remained liable under the Ground Lease in the event BREOF Louisville or its assignee failed to pay the amount due for rent, taxes, utilities, and/or insurance.

19.     As part of a broader and connected real estate transaction, on or about February 19, 2013, pursuant to an assignment and assumption of sublease, BREOF Louisville assigned its rights and interests under the Ground Sublease to an entity named Louisville Leasehold.  Upon information and belief, Messrs. Weitz, Pangli, and Schnell were the members of Louisville Leasehold.

20.     Pursuant to the terms of the assignment and assumption of sublease, Louisville Leasehold agreed to assume all of BREOF Louisville's covenants, obligations, and liability under the Ground Sublease.

21.     Accordingly, Louisville Leasehold became a subtenant under the Ground Sublease and thus, became liable for all rents, taxes, utilities, and insurance accruing under the Ground Lease.

22.     Louisville Leasehold, however, was never adequately capitalized, never paid any moneys to Chase pursuant to the Ground Sublease, and never paid any taxes, utilities, or insurance due to third parties under the Ground Sublease.  Louisville Leasehold was a sham entity created by Messrs. Weitz, Pangli, and Schnell to avoid paying their obligations regarding the Ground Lease Property while still permitting them to secure certain office property as part of a broader, connected real estate transaction.

23.     In particular, in February 2013, Louisville Leasehold defaulted due to its failure to pay taxes under the Ground Lease and, in March 2013, Louisville Leasehold defaulted due to its failure to pay rent under the Ground Lease.

**The Prior Lawsuit and Settlement.**

24.     As a result of Louisville Leasehold's breaches, on or about June 10, 2014, Chase commenced a lawsuit against Non-Party Golden Ignot, LLP, Louisville Leasehold, Peter Weitz, Non-Party Greenstone Asset Management, LLC, Inderjit Pangli, and Non-Party GI Louisville, LLC (the "Defendant Parties") in a case styled *JPMorgan Chase Bank, National Association v. Golden Ignot, LLP et al.*, U.S. District Court, Western District of Kentucky, Louisville Division, Case No. 3:14-CV-493-M (the "Prior Lawsuit").

25.     Chase asserted claims against the Defendant Parties for breach of contract and alter-ego/instrumentality liability for breach of contract given that Louisville Leasehold was a sham entity created for the sole purpose of assuming the obligations under the Ground Lease – but not fulfilling any of its obligations.  Indeed, the same individuals were involved in connected real estate transactions at the same time, including Messrs. Weitz, Pangli, and Schnell (as owner in Golden Ignot and Louisville Leasehold).  Whereas Messrs. Weitz, Pangli, and Schnell sought desirable adjacent office property, upon information and belief, they were uninterested in the Ground Lease Property that was connected with the real estate transaction and, thus, created a sham entity to take over the Ground Sublease as subtenant.  Chase sought to pierce the corporate veil of Louisville Leasehold in the Prior Lawsuit.

26.     On or about June 15, 2017, a settlement was reached to resolve the Prior Lawsuit. A true and accurate copy of the settlement agreement (the "Settlement Agreement") is attached hereto as Exhibit 2.

27.     Chase had already incurred over a million dollars in damages at the time of the Settlement Agreement.

28.     Kentucky Leasehold was created by Messrs. Weitz, Pangli, and Schnell for the purpose of entering into the Settlement Agreement and related agreements, as detailed below.

29.     The Settlement Agreement required, and was executed along with, several other counterpart agreements:

    a.  Kentucky Leasehold entered into a sublease agreement with Chase, whereby Kentucky Leasehold agreed to sublet the Ground Lease Property (the "Sublease").  [See Ex. 2, Ex. B.]

    b.  Messrs. Weitz, Pangli and Schnell entered into an Unconditional Guaranty of Payment and Performance of the Sublease, whereby they jointly and severally (subject to certain limitations), unconditionally guaranteed the

payment and performance by Kentucky Leasehold under the Sublease (the "Sublease Guaranty").  [*See* Ex. 2, Ex. C.]

c.  Messrs. Weitz, Pangli and Schnell also entered into a Pledge and Security Agreement, whereby they pledged their partnership interests in Golden Ignot, LLP as security for their performance under the Sublease Guaranty and the Settlement Agreement.  [*See* Ex. 2, Ex. D.]

30.    The Settlement Agreement, Sublease, Sublease Guaranty, and Pledge and Security Agreement are referred to collectively herein as the "Settlement Documents."

31.    The parties agreed that, in connection with the Prior Litigation, Chase was pursuing arrearages in the amount of $1,569,007.04 from Defendants for rent, out-of-pocket costs, expenses, attorneys' fees, and interest that were owed under the prior BREOF Sublease through the effective date of the Settlement Agreement ("Arrearages").  [*See id.*, § 4(a).]

32.    In salient part, the Settlement Agreement required Defendants to deposit $250,000.00 into an escrow account with Chase (the "Escrow Account") on the effective date of the Settlement Agreement (the "Initial Escrow Deposit").  [*See* Ex. 2, § 3(a)(iv).]

33.    In light of the gross nature of the initial breach, in addition to the amount already held in escrow, Defendants were required to deposit additional money sufficient to bring the balance of the Escrow Account to $2,000,000.00 by a date certain, and in any event, no later than two years following the effective date of the Settlement Agreement (the "Second Escrow Deposit").  [*See id.*, § 3(b)(ii).]

34.    Specifically, Defendants were required to ensure the Escrow Account balance was $2,000,000.00 no later than June 15, 2019.

35.    Defendants untimely made the Second Escrow Deposit on June 25, 2019.

36.     In addition to the other amounts owed under the Settlement Agreement, Defendants were required to pay an additional $250,000.00 as an arrearage offset on or before January 1, 2018 (the "Arrearage Offset").  [*See id.*, § 3(b)(iv).]

37.     Defendants untimely made the Arrearage Offset payment on or about February 9, 2018.

38.     Going forward, *i.e.* from the effective date of the Settlement Agreement, Kentucky Leasehold was required to pay all amounts owed under the Sublease Agreement, including all rent through December 31, 2030, which was guaranteed by the Sublease Guaranty and secured by the Pledge and Security Agreement.

39.     Under the Settlement Agreement, Messrs. Weitz, Pangli, and Schnell are required to annually provide Chase with updated financial disclosures "to assist Chase in understanding and aiding their ability to collect from Weitz, Pangli and Schnell following any default under the Sublease Guaranty or" the Settlement Agreement.  [Ex. 2, §§ 3(a)(v), 3(b)(v).]

40.     Messrs. Weitz, Pangli, and Schnell have failed and/or refused to provide updated financial disclosures to Chase.

**Defendants' Numerous Breaches of the Settlement Documents.**

41.     Defendants have failed to comply with their business and contractual obligations to Chase.

42.     In early 2020, Kentucky Leasehold stopped paying the full rent due under the Sublease and thereafter, Kentucky Leasehold ceased paying any amounts due under the Sublease. As of October 2022, the amount of rent due and owing (along with interest and fees) exceeds $800,000, and continues to increase each month.

43.     As a result, Kentucky Leasehold is in default under the Sublease Agreement and correspondingly, the Settlement Agreement.  [*See* Ex. 2, Ex. B, § 13(a)(i).]

44.     Messrs. Weitz, Pangli, and Schnell are also in default under the Sublease Guaranty, which requires that they immediately issue Chase the full and prompt payment of any and all rent, expenses, and liability under the Sublease if Kentucky Leasehold fails to pay the same.  [*See* Ex. 2, Ex. C. §§ 1–2, Messrs. Weitz, Pangli, and Schnell "shall be liable for the payment of the Indebtedness and the performance of the Obligations as fully and to the same effect as if [they] were the maker or principal obligor under the Sublease."]

45.     Messrs. Weitz, Pangli, and Schnell have not paid Chase the full amount of all rent, expenses, and liability due under the Sublease.

46.     The Settlement Agreement states that, upon any default by any of the parties of its/their obligations under any of the Settlement Documents, Defendants forfeit ownership of the Second Escrow Deposit:

> Chase shall have the right, in addition to all other rights and remedies available at law or in equity (including, but not limited to, pursuit of an action for damages and specific performance), (i) to immediately take and assume unrestricted ownership, without claim by the Defendant[s] [], of any funds then held in the Escrow Account, which funds shall be the property of Chase and shall not be returned or refunded to the Defendant[s.]

[Ex. 2, § 4(C).]

47.     In accordance with the Settlement Agreement, Chase has taken and assumed unrestricted ownership of the $2,000,000.00 in funds held in the Escrow Account.

48.     The Settlement Agreement provides that, upon default, Chase shall have the right "to pursue an action for damages against the" Defendants with the following formula encapsulating Chase's damages:

9

(A) all amounts due under the Sublease [], <u>plus</u> (B) the amount of the Arrearages, <u>less</u> (C) the amount of funds recovered by Chase from the Escrow Account, <u>less</u> (D) to the extent received by Chase from the Defendant Parties, the amount of the Arrearage Offset (such calculated amount being referred to herein as the "***Total Damages***")[.]

[*Id.*, § 4(C), emphasis in original.]

49.     Pursuant to the Sublease, Kentucky Leasehold is liable for all rent, taxes, utilities, and insurance accruing under the Ground Lease.  [Ex. 2, Ex. B, § 5.]

50.     Pursuant to the Sublease Guaranty, Messrs. Weitz, Pangli, and Schell are liable for all rent, taxes, utilities, and insurance accruing under the Sublease if not paid by Kentucky Leasehold.  [*See* Ex. 2, Ex. C, §§ 1–3.]

51.     The monthly basic rent of the Ground Lease Property is $26,845.50, and is subject to periodic escalators as follows:

| Sublease Term | Monthly Basic Rent |
|---|---|
| Effective Date – 12/31/2016 | $21,211.25 |
| 01/01/2017 – 12/31/2021 | $23,862.67 |
| 01/01/2022 – 12/31/2026 | $26,845.50 |
| 01/01/2027 – 12/31/2030 | $30,201.17 |

[*Id.*]

52.     The Sublease provides, in pertinent part, that failure to pay rent is an "Event of Default."  [Ex. 2, Ex. B, § 13(a)(i).]

53.     Kentucky Leasehold acknowledged its default, abandoned the Ground Lease Property, and returned possession to Chase in 2021.

54.     Upon the occurrence of an Event of Default under the Sublease, Chase, without further notice to Kentucky Leasehold, is permitted to, among other remedies, "[e]xercise against the [Defendants] the remedies described in the Settlement Agreement," including pursuing an action for damages against Defendants.  [*See id.*, § 13(b)(vii).]

55.    Chase is permitted to "proceed against [Messrs. Weitz, Pangli, and Schnell] following any breach or default by [Kentucky Leasehold] without first proceeding against [Kentucky Leasehold] and without previous notice to or demand upon either [Kentucky Leasehold] or" Messrs. Weitz, Pangli, and Schnell. [Ex. 2, Ex. C, § 3.]

56.    Chase is entitled to, among other remedies, "[t]erminate th[e] Sublease, repossess the Premises, and recover immediately from [Kentucky Leasehold], as accelerated Rent and liquidated damages, the total amount due to be paid by [Kentucky Leasehold] during the balance of the Term[.]" [*Id.*, § 13(b)(iii); *see also* Ex. 2, Ex. C, § 10.]

57.    Chase is further entitled to recover any "reasonable costs and expenses incurred, including, without limitation, attorneys' fees, in enforcing any of its rights or remedies under the Sublease[.]" [*Id.*, §13(d).]

58.    The total amount due under the Sublease, pursuant to the acceleration clause contained in the Settlement Documents, exceeds $3,500,000 (exclusive of interest, taxes, insurance, and utilities going forward through the end of the Sublease term).

59.    Therefore, pursuant to the formula contained in the Settlement Agreement, the Total Damages owed to Chase jointly by Messrs. Weitz, Pangli, and Schnell are equal to the following: in excess of $3,500,000 (amount under the Sublease) + $1,569,007.04 (Arrearages) – $2,000,000 (Escrow Account) – $250,000 (Arrearage Offset), which totals more than $2,800,000 in damages suffered due to Defendants' breaches (exclusive of interest, taxes, insurance, and utilities going forward through the end of the Sublease term).

## COUNT ONE
### (Breach of Contract)

60.    Chase incorporates the foregoing paragraphs and allegations as if fully restated herein.

61.    The Settlement Documents are valid, enforceable contracts.

62.    Chase has performed its obligations under the Settlement Documents and is not in material breach of the same.

63.    Defendants have materially breached and are in default under the Settlement Documents.

64.    Kentucky Leasehold is in default under the Settlement Agreement and Sublease for failing and/or refusing to pay the amounts due and owing the Chase under the terms of the agreements.

65.    Messrs. Weitz, Pangli, and Schnell are in default under the Settlement Agreement and Guaranty for failing to pay the amounts due and owing under the Sublease when Kentucky Leasehold failed and/or refused to do so.

66.    As a result of Defendants' breaches, Chase has suffered damages in excess of $75,000, the complete amount to be established at trial, plus interests, costs, and attorneys' fees.

67.    Chase's damages exceed $2,800,000, as the Defendants agreed to accelerate the amounts due on the remaining term of the Sublease upon their default.  The Settlement Documents are a compilation of agreements that reference each other and their execution was required by the Settlement Agreement.  Without the execution of all of the Settlement Documents, Chase would not have entered into the same and dismissed the Prior Lawsuit.

68.    Messrs. Weitz, Pangli, and Schnell are jointly (and jointly and severally) liable for Chase's damages.

69.    While the Settlement Documents, namely the Settlement Agreement and Sublease Guaranty, provide that Messrs. Weitz, Pangli, and Schnell are severally liable if certain conditions have been met, Messrs. Weitz, Pangli, and Schnell failed to meet those conditions.  For example,

Messrs. Weitz, Pangli, and Schnell failed to timely pay the Arrearage Offset. They similarly failed to timely pay the Second Escrow Deposit.

70.     In order for Messrs. Weitz, Pangli, and Schnell to be severally liable for Chase's damages, there had to have been "no default by any of" them under any of the Settlement Documents upon Chase's receipt in full of the Second Escrow Deposit.

71.     The Settlement Agreement contains a time-is-of-the-essence clause.

72.     Therefore, Messrs. Weitz, Pangli, and Schnell's failure to timely make several payments, including failing to timely pay the Second Escrow Deposit, constitutes a default under the Settlement Documents, rendering them jointly – not severally – liable for the damages Chase has and will incur.

73.     Additionally, Chase is entitled to recover its attorneys' fees and all costs associated with this action to enforce its rights under the Settlement Documents from Defendants pursuant to the terms of the same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JPMorgan Chase Bank, National Association requests that this Court:

A.     Grant judgment in favor of Chase and against Defendants Kentucky Leasehold, LLC, Peter Weitz, Inderjit Pangli, and Bradley Schnell;

B.     Grant judgment against Kentucky Leasehold in an amount to be proven at trial in excess of $75,000;

C.     Grant judgment against Messrs. Weitz, Pangli, and Schnell jointly in an amount to be proven at trial in excess of $75,000;

D.    Award Chase reasonable attorneys' fees, pre-judgment and post-judgment interest, and the costs of this action; and

E.    Grant such relief as the Court deems just and proper, and as the circumstances may require.

Respectfully submitted,

/s/  *Jasmine R. Chenault-Diehlmann*
Jasmine R. Chenault-Diehlmann (KY 98021)
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
T: (502) 540-2300
F: (502) 585-2207
Email: jasmine.diehlmann@dinsmore.com

Of Counsel:

Charles E. Ticknor, III (OH 0042559)
(*pro hac vice* application forthcoming)
Rachel E. Shonebarger (OH 0098999)
(*pro hac vice* application forthcoming)
DINSMORE & SHOHL LLP
191 W. Nationwide Blvd., Suite 200
Columbus, Ohio 43215
Phone: (614) 628-6880
Fax:    (614) 628-6890
Email:  charles.ticknor@dinsmore.com
          rachel.shonebarger@dinsmore.com

*Counsel for Plaintiff JPMorgan Chase Bank, National Association*

25646118